Thirty-nine-year-old Thomas Steele, Jr., was convicted for the first degree sodomy of a thirteen-year-old child. Sentence was twelve years' imprisonment. Three issues are raised on this appeal from that conviction.
 I
Steele contends that the State failed to prove a prima facie case of sodomy because "it failed to prove that the defendant placed his tongue on the prosecutrix's sex organs." Appellant's brief, p. 18.
Sodomy involves "deviate sexual intercourse" which is defined as "[a]ny act of sexual gratification . . . involving the sex organs of one person and the mouth or anus of another." Alabama Code 1975, § 13A-6-60(2).
The thirteen-year-old victim testified that Steele "got his penis out and rubbed up and down me and then he licked between my legs." The rubbing hurt and lasted about ten minutes. The appellant licked "up and down my sides of my womb" and licked between her legs where "I use the bathroom." The victim testified that afterward she "was sore between my legs but I wasn't bruised." She stated that she wanted Steele to go to jail "[b]ecause he messed with me sexually." The victim indicated that Steele never entered her "body with his penis or his hand or his tongue" and that "he just rubbed up and down."
The following portions of the record show that, although the victim's testimony was not as clear as it could have been as to what actually occurred, it was sufficient to present prima facie evidence of deviate sexual intercourse:
 "Q. And when you mean sex organ, what are you talking about? Can you tell me what that is?
"A. This right between my legs (indicating). *Page 126 
 "Q. Is it the thing that you use to go to the bathroom with?
"A. Yes.
 "Q. But it's not the other thing down there, is it?
"A. (Witness shakes head negatively.)"
* * * * * *
 "Q. When you refer to in between your legs, you mean, I guess, all in between your legs?
 "A. On the sides. Not inside my hole, on the sides.
 "Q. Okay. Now, you know there are two holes down there?
"A. Yeah, I think so.
"Q. Okay. Where in relation to those two holes?
 "A. He rubbed on the side of me, on the side, on these two sides before you get to the middle. It's two sides. He rubbed up and down those sides.
 "Q. Okay. You're not talking about the sides of your legs, are you?
"A. No, not the side of my leg.
 "Q. Okay. You're talking about the sides where you go to the bathroom, the opening in the middle?
"A. Uh-huh.
"Q. Okay. He rubbed up and down those two sides?
"A. (Witness nods head affirmatively.)
 "Q. Okay. Between your legs where you go to the bathroom?
"A. Yes.
 "Q. And you know that there's two places down there?
"A. (Witness nods head affirmatively.)
 "Q. One where you use the bathroom; one where the babies come?
"A. Yes.
"Q. Okay. You know that?
"A. Yes.
"Q. They're all together?
"A. I know that.
"Q. It's all together down there to you, isn't it?
"A. Yes.
"Q. Okay. And he put his tongue all down there?
"A. All down there."
Prichard Police Officer Jacqueline Arnold testified that the victim told her that Steele "tried to have sex with her." Steele's argument is that the words and phrases of the victim in narrating the acts of the crime are not sufficiently specific to prove a prima facie case. However, here, as inHorn v. State, 49 Ala. App. 489, 491, 273 So.2d 249 (1973), "the jury was well acquainted with, and understood, the words and phrases of this witness." We find that a prima facie case was presented and that case was properly submitted to the jury.
Although the fact of deviate sexual intercourse must be established beyond a reasonable doubt in order to sustain a conviction for sodomy, it need not be proved in any particular form of words and circumstantial evidence may suffice. CompareSwint v. State, 455 So.2d 285, 286-287 (Ala.Cr.App. 1984) (victim's testimony that accused "got up on top" and "started fooling with" her, and victim's sister's testimony that "fooled with" meant "sex," supported finding of sexual intercourse). InHuggins v. State, 271 Ala. 428, 123 So.2d 911 (1960), the six-year-old victim testified the accused "rubbed his 'tee-tee' against hers; that when he rubbed it hurt the girl 'a little bit' and then 'it was damp.' " 271 Ala. at 430, 123 So.2d 911. The Supreme Court stated, "If the testimony of the prosecutrix be believed, appellant placed his genitals in physical contact with the private parts of the prosecutrix. We think her testimony was sufficient to support a finding that appellant did abuse prosecutrix in an attempt to have carnal knowledge."271 Ala. at 434, 123 So.2d 911.
Penetration is not an element of sodomy. Wade v. State,453 So.2d 1072, 1073 (Ala.Cr.App. 1984). The fact that there was medical evidence that there was "no evidence of trauma or lesions" to the victim's vulva does not negate presentation of a prima facie case since "[i]njury to the victim's private parts is merely a factor that should be considered." Lanton v.State, 456 So.2d 873, 874 (Ala.Cr.App. 1984), cert. denied,Lanton v. Alabama, 471 U.S. 1095, 105 S.Ct. 2314,85 L.Ed.2d 834 (1985). Here, the testimony of the unwilling victim *Page 127 
by itself is sufficient to sustain the conviction. Rudolph v.State, 355 So.2d 739, 740 (Ala.Cr.App.), cert. denied, Ex parteRudolph, 355 So.2d 740 (Ala. 1978).
"The matter of the prior inconsistent statement and the victim's explanation as to why she made it could have been considered by the jury in determining her credibility, but did not affect the State's presentation of a prima facie case."McIntosh v. State, 443 So.2d 1275, 1279-80 (Ala.Cr.App.), reversed on other grounds, Ex parte McIntosh, 443 So.2d 1283
(Ala. 1983). Once the State presents a prima facie case, "the resolution of conflicting testimony on the part of State witnesses is for the jury." Patterson v. State, 455 So.2d 284,285 (Ala.Cr.App. 1984); Mosley v. State, 461 So.2d 34, 36
(Ala.Cr.App. 1984).
Reviewing the evidence in the light most favorable to the State, as this Court is required to do, we find that a prima facie case was presented and that the jury's verdict is supported by the evidence. "This Court is not a trier of fact."Mosley, 461 So.2d at 36. The trial court properly denied Steele's motion for a directed verdict of acquittal and motion for a new trial.
 II
The trial court did not err in denying Steele's motion for a mistrial occasioned by the prosecutor's closing argument.
The prosecutor's statement that "you heard [the victim's mother] tell you that there were other times that [the victim] while Thomas Steele was standing there with her that she denied Thomas Steele doing anything to her" was based on Mrs. Thomas' testimony that was elicited on cross-examination without objection.
The prosecutor argued, "And on this particular day, what happened was what she didn't want to happen, and [the victim] didn't want to happen, and [the victim's mother] didn't want to happen."
The victim had testified without objection that she told a social worker about the incident "[b]ecause I was tired of it happening to me." The victim's mother never testified that she did not want her husband, the victim's stepfather, sexually abusing her daughter. Any error in overruling the objection to this comment was cured when the trial court instructed the jury that "if there was no evidence to that particular effect, then you're to disregard the comments of counsel."
The prosecutor also commented: "[P]roblems began to develop with her daughter [victim] that she loved very much. And she tried to talk to [the victim] about those problems. [The victim] at one point started to run away, away from her and from this man. She didn't know why. In January, she thought she knew why. And she chose the wrong course. She made a mistake." Defense counsel objected, "There's no evidence of this." The trial judge responded, "Overrule the objection. Again you've heard the evidence," and denied the motion for a mistrial. On cross-examination by defense counsel, the victim testified without objection:
 "The counselor at school had asked me why I had been running away from home. And I had told her about my stepfather but I didn't tell her that he was messing with me. I told her that he was just treating me bad. And Miss McCaskill came out to talk to me about that. And then I got so fed up with it, so I told Miss McCaskill the whole thing."
Ms. Rozanne C. McCaskill, a social worker for the Department of Pensions and Security, testified that the victim told her that "she had some problems with her stepfather."
"[T]he rule is that counsel are allowed considerable latitude in drawing their deductions from the evidence in argument to the jury." Espey v. State, 270 Ala. 669, 674, 120 So.2d 904
(1960). "All evidence admitted is subject to comment by counsel." Roberts v. State, 346 So.2d 473, 476 (Ala.Cr.App.), cert. denied, 346 So.2d 478 (Ala. 1977).
"A motion for a mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court." Nix v. State, 370 So.2d 1115, 1117
(Ala.Cr.App.), cert. denied, Ex parte Nix, 370 So.2d 1119
(Ala. 1979); Diamond *Page 128 v. State, 363 So.2d 109, 112 (Ala.Cr.App. 1978). "[T]he trial judge is in a better position than an appellate court to determine whether remarks were so prejudicial as to be ineradicable." Harbor v. State, 465 So.2d 455, 459
(Ala.Cr.App. 1984), cert. quashed, Ex parte Harbor,465 So.2d 460 (Ala. 1985). "When prejudicial remarks have been made, the action of the trial court in regard to the arguments is reviewed with all presumptions in favor of such actions."Hammins v. State, 439 So.2d 809, 811 (Ala.Cr.App. 1983).
For these reasons, we find no error in the trial court's denial of the requested mistrials.
 III
The motion for a new trial on the ground that the State withheld medical evidence was properly denied.
The medical records were introduced into evidence at trial by defense counsel. Counsel was given the records the day before trial. He did not subpoena Dr. Stephen Tygart, the examining physician, relying on his expectations that the witness would testify for and had been subpoenaed by the State. After the first day of trial, defense counsel contacted the doctor by telephone, told him that he was under subpoena, and that he was expected to be in court the next day. The doctor did not appear for court.
The trial judge refused to delay the trial because defense counsel had not subpoenaed the doctor even though counsel knew at voir dire examination of the jury that the State had the doctor "on call" and might use him in rebuttal.
The medical records of the examination performed by Dr. Tygart and introduced into evidence show that there were no bruises, scratches, or lacerations on the "body surface;" that there was "no evidence of trauma or lesions" to the vulva; that the penis did not penetrate the vulva; that there was no oral sex; and that there was no anal sex. The record also reflected the doctor's notes: "A 12-year old who alleges stepfather licked and touched her with his penis 'between her legs.' No penetration by history. Denies trauma (physical)."
At the hearing on the motion for new trial, Dr. Tygart testified to his medical records and also indicated that there was no evidence of any tenderness, rawness, or anything that would lead him to believe that the victim had been rubbed in any manner, but that this did not exclude the fact that someone could have "licked her between her legs."
The motion for new trial was properly denied. "Though the state had subpoenaed the absent witness, a defendant desiring a witness cannot rely on the fact that the state has issued process for him." Smith v. State, 368 So.2d 298, 304
(Ala.Cr.App. 1978), cert. quashed, Ex parte Smith, 368 So.2d 305
(Ala. 1979). A new trial will not be granted on the basis of evidence, even newly discovered, which would be merely cumulative to that presented at trial. Evans v. State, 264 Ala. 289,291, 87 So.2d 437 (1956).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.