BOWEN, Judge.
The appellant, Willie James Johnson, was convicted of the unlawful possession of crack cocaine and was sentenced to five years’ imprisonment. On this appeal from that conviction, the appellant argues that the trial court committed reversible error in allowing the prosecution to “badger” the appellant concerning his post-arrest, post-Miranda silence.
On cross-examination of one of the arresting officers, defense counsel elicited the fact that the appellant had been questioned at the police station. R. 34. The appellant’s defense was that he was physically and verbally accosted by the two police officers who framed him.
At trial the appellant testified in his own defense. On direct examination, he testified that one officer grabbed him, “slammed” him to the ground, and cursed him. The two officers produced a container and stated that it belonged to the appellant. On cross-examination the appellant explained that when the officer “cussed” him, the officer said, “If you ever try to assault my fucking partner again, I’m going to kill your black ass.” R. 129. The appellant testified that he never said anything to either of the officers. From the record of the appellant’s cross-examination:
“Q. You said that nobody asked you if you had any drugs. Do you know why they didn’t ask you?
“A. No, I don’t.
“Q. Isn’t it because you kept telling them that you didn’t understand your rights and you refused to sign your rights form?
“A. Well, that was—
“MR. FOXWORTH [defense counsel]: Objection, Your Honor.
“THE COURT: Overrule.
“Q. Isn’t that true?
“A. That was at the narcotics bureau, if I’m not mistaken.
“Q. And they tried to take a statement from you, didn’t they?
“A. I didn’t have really — I didn’t really have a reason to give a statement, because I didn’t really know the reason why I was being in that — being locked down like that.
“Q. They told you that they found you in possession of drugs, didn’t they?
“A. That is what they said.
“Q. And Corporal Hanna read you your rights at least three times, didn’t he?
“A. He read me my rights.
“Q. Several times, didn’t he?
“A. He read me my rights.
*1302 “Q. Did he read them several times or not, or do you remember?
“A. He read them, and then he just told me — he said, well, I’m just going to put up here do not understand.
“Q. He just put it on there for the heck of it?
“A. I told him I needed to talk with my lawyer because I didn’t know what was going on at that particular time.
“Q. In fact, you said that you didn’t understand and he read you your rights at least three times and you didn’t want to give a statement and you kept saying, I don’t understand.
“MR. POXWORTH: Objection, Your Honor. She’s gone over the same testimony again. He already said he didn’t sign it. He has a right to refuse to sign.
“THE COURT: Overrule. Go ahead.
“Q. You can answer.
“A. The question again?
“Q. Isn’t it true that you kept telling him you didn’t understand your rights?
“A. I told him I didn’t understand the reason why I was there.
“Q. And that you didn’t understand your rights so that you weren’t going to give a statement?
“A. Wasn’t no need for me to give a statement if I didn’t understand the reason why they was bringing me in.
“Q. And you didn’t offer to tell Corporal Hanna that you were just walking to your cousins when you were told to freeze and you put your hands up? You never told him that, did you?
“A. I told — who is corporal — who is—
“Q. At the narcotics office, the man that read you your rights at the narcotics office.
“A. He never asked me.
“Q. And you never told him, either, did you?
“A. But he never asked.
“Q. Because you told him you didn’t understand your rights. Did you ever volunteer to tell him anything?
“A. No, I didn’t.
“Q. Did you ever try to tell him anything yourself?
“A. What he asked me when we was there, he asked me to set up a drug bust or something. And I told him — I said, I don’t have no reason to do that because the drugs that y’all picked up off the ground isn’t mine.” R. 130-33.
Clearly “the use for impeachment purposes of [a defendant’s] silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment.” Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). “The use of post-arrest, post-Miranda warning silence of the accused as evidence of his guilt is a violation of the due process clauses of both the Fourteenth Amendment to the Constitution of the United States and § Six of the Alabama Constitution of 1901, and counsel for the prosecution must scrupulously avoid all reference to or use of accused’s assertion of his right to remain silent.” Lynch v. State, 587 So.2d 305, 306 (Ala.Cr.App.1990), reversed on other grounds, 587 So.2d 306 (Ala.1991).
Although we vigorously condemn the prosecutor’s tactics in this case, the issue has not been preserved for appellate review because there was never a proper and timely objection. “Although it is generally recognized that a specific objection to evidence offered is a condition precedent to appellate review, a general objection is sufficient to predicate error on appeal if the evidentiary matter to which it was addressed is patently inadmissible. McElroy’s Alabama Evidence § 426.01(7)-(10) at 797-802 (3d 1977). Stated differently, a general objection to admission of evidence should be sustained if the evidence is illegal for any purpose and cannot be made legal by introducing other evidence or by otherwise framing the inquiry.” Satterwhite v. State, 364 So.2d 359, 360 (Ala.1978). Here, a specific objection was required. Defense counsel’s general objection was to the prosecutor’s question indicating that the appellant did not understand his constitutional rights, not that he was invoking any of those rights.
“An objection, of course, should fairly and specifically point out the particular grounds on which an alleged error occurred *1303 in order to inform the trial judge of the legal basis of the objection, thereby affording the trial judge an opportunity to reevaluate his or her initial ruling in light of the grounds alleged and to change it, if deemed necessary.” Ex parte Webb, 586 So.2d 954, 957 (Ala.1991). “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). The objection, “I object,” “is not sufficient to place the trial court in error for overruling the objection.” Smoot v. State, 381 So.2d 668, 671 (Ala.Cr.App.1980). “An appellate court’s review on appeal is limited to matters seasonably raised in the trial court. ‘Even questions involving constitutional rights must be seasonably raised at the trial court level.’ ... In all but capital cases, alleged error in a criminal proceeding must be properly preserved before an appellate court will examine it; therefore, it is incumbent upon defense counsel to adequately preserve alleged errors in a proceeding by making an appropriate and timely objection.” Ross v. State, 581 So.2d 495, 496 (Ala.1991). Compare Ex parte Purser, 607 So.2d 301 (Ala.1992).
The judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.