William Howard Marty, the appellant, was convicted of conspiracy to traffic in cannabis,[1] was sentenced to 16 years' imprisonment, and was fined $25,000. On this direct appeal of that conviction, he raises three issues.
The State's evidence established the following: The appellant agreed with Johnny Spain, a confidential informant for the Narcotics Division of the Alcoholic Beverage Control Board, to buy marihuana for resale. In a series of meetings during which Spain was "wired," the appellant negotiated to buy from Spain 10 pounds of marihuana for $1000 per pound. Posing as Spain's suppliers, ABC Board narcotics agents brought 10 one-pound bags of marihuana to a Birmingham motel for a "reverse sting" operation. Tendering one of the bags for inspection by the appellant and his codefendants, the agents stated that they would provide the rest of the marihuana when they received the agreed upon cash purchase price. The appellant and his codefendants were arrested when one of the codefendants presented the money for the drugs.
 I
The appellant maintains that the State did not establish a prima facie case of conspiracy to traffic in cannabis because it did not prove that the plant material he allegedly agreed to buy was marihuana and that it weighed more than 2.2 pounds. See Ala. Code 1975, § 13A-12-231(1)(a) ("[a]ny person who knowingly sells, manufactures, delivers or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony *Page 418 
shall be known as 'trafficking in cannabis' "). At trial, the forensic toxicologist testified that she analyzed one bag containing approximately one pound of green plant material and determined that it was marihuana.
Following the appellant's motion for a judgment of acquittal on the ground that the State had failed to present evidence meeting the threshold 2.2 pound requirement for trafficking, the circuit court made the following comments:
 "THE COURT: Well, one thing that bothered me, and then I thought about it was is there a possibility or impossibility of performance. If there was an impossibility of performance, I was wondering if you could have a conspiracy to commit a certain crime. However, I know that there have been recent cases where there has been a conspiracy to commit murder whereby the main actor was conspiring with unknown undercover agents to have someone murdered, and, obviously, since she was conspiring with law enforcement agents, the act would have been an impossibility because they had no intention to follow out the act. I don't know if impossibility of performance due to an insufficient amount for it to be trafficking would be a defense.
". . . .
 "[Defense counsel's] argument is very persuasive, and I would say this, that the best course of conduct for [the State] to pursue from this point forward, if they wish to continue these type cases, at least submit sufficient samples to the department of forensic sciences so that a prima facie amount in excess of 2.2 pounds is proven by scientific testimony. I think that is the better choice. Whether that is absolutely required, I think that certainly removes that problem, if it, in fact, is a problem." R. 1019-22.
The appellant was charged with conspiracy to traffic in cannabis. The essence of a conspiracy is the agreement to engage in the prohibited conduct.
 " 'The elements of conspiracy are: first, the specific intent that a crime be performed; second, an agreement with another person to engage in or cause that crime to be performed, and third, the commission of an overt act by one of the conspirators in furtherance of the conspiracy.' "
Zumbado v. State, 615 So.2d 1223, 1242 (Ala.Cr.App. 1993) (quoting Greer v. State, 563 So.2d 39, 40 (Ala.Cr.App. 1990)).
For conspiracy, there is "no require[ment] that the criminal offense agreed to be actually completed." Calhoun v.State, 460 So.2d 268, 272 (Ala.Cr.App. 1984). Therefore, in order to establish a prima facie case of conspiracy to traffic in cannabis, the State was not required to present any expert testimony from the forensic toxicologist, either that the green plant material was actually marihuana or that it weighed more than 2.2 pounds. Compare Zumbado v. State, 615 So.2d at 1244 (proof that intended murder victim was alive would have little bearing on charge of conspiracy to murder since victim's death was not an element of conspiracy to murder).
Impossibility of performance is not a defense to conspiracy. 2 W. LaFave A. Scott, Substantive Criminal Law § 6.5(b) (1986).
 "[T]he conspiracy cases have usually . . . [held] that impossibility of any kind is not a defense. It has been held, for example: that there may be a conspiracy to commit abortion even when, unknown to the conspirators, the woman was not pregnant; that there may be a conspiracy to commit rape on a woman believed to be unconscious although she was in fact dead; that there may be a conspiracy to defraud the United States notwithstanding the fact that the fraud was impossible of commission because the government was aware of the scheme or because the forged bonds were not witnessed by the proper official; that there may be a conspiracy to smuggle liquor in violation of the customs law even though, unknown to the conspirators, the liquor was of domestic origin; and that there may be a conspiracy to obstruct justice even if the scheme of having certain individuals called as jurors could not have been accomplished by the conspirators."
Id. at 92-93 (footnotes omitted).
The prosecution presented a prima facie case of conspiracy to traffic in cannabis by *Page 419 
introducing evidence that the appellant had the specific intent to buy in excess of 2.2 pounds of marihuana, agreed with Spain to make the purchase, and performed specific overt acts in furtherance of that agreement. See Beavers v. State,627 So.2d 1021 (Ala.Cr.App. 1991), reversed on another ground,627 So.2d 1024 (Ala. 1992). The appellant's motion for a judgment of acquittal was correctly overruled.
 II
The appellant claims that the State struck six black jurors in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609
(Ala. 1987).
Although the record is not clear, it appears that either 41% or 42% or the original venire was black. R. 122, 131. The State used 13 of its 24 peremptory strikes to eliminate black prospective jurors. R. 128. The defense used 22 of its 24 peremptory challenges to remove white veniremembers. R. 123. Both the State and the defense made Batson motions and each explained its reasons for its peremptory strikes. At the end of the explanation process, which consumed the better part of one day, the circuit court found that the defense had not given race-neutral reasons for its strikes of 6 white veniremembers, and that the State had not provided race-neutral explanations for its strikes of 3 black veniremembers.
The court ordered that those nine jurors be returned to the venire. The parties then conducted further voir dire of the 9 prospective jurors and finished striking the jury. The defense eliminated 4 of the 6 white jurors it had originally struck, plus 2 black jurors. The State struck 3 new veniremembers, all of whom were white. We are unable to determine the racial composition of the trial jury.
The record on appeal, as originally filed, did not contain a venire list or a list of those who actually served on the jury. This court requested and obtained both lists from the court reporter. Those lists, however, do not indicate the race of the veniremembers or jurors. We have been able to ascertain the race of some of the veniremembers by referring to the parties' explanations for their peremptory strikes.
On appeal, the appellant claims that the State's striking jurors numbered 35, 51, and 341 was racially discriminatory. The prosecutor stated that he struck those jurors, as well as one white juror, because they were unemployed.
 "What I'm looking for, Your Honor in this case is somebody who is employed and has ties to the community. Someone who would not look to the sale of drugs as we have here, or drugs themselves, as a way out of being unemployed or being out of not having money." R. 218.
The appellant argues that the foregoing explanation was a sham because the prosecutor did not strike jurors numbered 45, 62, and 246, all of whom were unemployed white females. Juror Number 45 stated:
 "[My name is] G.C. I live in Vestavia. I'm unemployed. My husband, D.C., has an engineering and manufacturer's agent firm." R. 24.
Juror Number 62 introduced herself as follows:
 "[My name is] O.C. I live in Bluff Park. My husband is retired from the telephone company. I'm a housewife." R. 25.
Juror Number 246 said:
 "[My name is] C.P. I live in the Chalkville area. I'm retired from the Postal Service. My husband is also retired." R. 30.
An explanation that a prosecutor struck a veniremember because the veniremember was unemployed has been held to be race-neutral as long as the prosecutor struck veniremembers of other races for the same reason. See Steeley v. State,622 So.2d 421, 422 (Ala.Cr.App. 1992), cert. quashed, 622 So.2d 426
(Ala. 1993); Williams v. State, 634 So.2d 1034, 1039
(Ala.Cr.App. 1993).
In this case, the prosecutor's failure to strike jurors numbered 45, 62, and 246 did not conflict with his stated reasons for striking "unemployed" people. It is clear from the answers of all three jurors that they were not "unemployed" within the meaning of the prosecutor's reason for striking the jobless, i.e., those people who would tend to "look to *Page 420 
the sale of drugs . . ., or drugs themselves, as a way out of. . . not having money." R. 218. The prosecutor was entitled to assume that Juror Number 45, the wife of a self-employed businessman, Juror Number 62, a housewife married to a retired telephone company employee, and Juror Number 246, a retired postal employee, all had sources of income that made it unlikely that they would turn to selling drugs as a way of avoiding financial problems. We hold that the reasons given for striking jurors numbered 35, 51, and 341 were race-neutral.
The appellant also challenges the State's strikes of jurors numbered 46, 55, and 139. The prosecutor gave the following reasons for striking those jurors:
 "From the eighteenth strike through the rest of the state's strikes, Your Honor, we are striking not only whites but also blacks who responded to little, if anything, because there were better qualified jurors to sit on this case. We had more information on other jurors. On each one of these I believe you are going to find that each one of these either answered no [voir dire] questions at all or if they did answer any questions they answered merely to being a victim of a crime, and that is it.
". . . .
 "[W]e struck whites and blacks who responded to either nothing or the fact that they responded merely to the question [of] how many people have been the victim of a crime.
 ". . . [Y]ou know, we are toward the end of the strikes, Your Honor. You have to get down to something and strike somebody. When it comes down to making a criteria that fits all the jurors, white, black, green, or purple, I come up to the people that I know the most about, the people that I can make a determination about. And these last seven are that way. . . . They are people that I know little or nothing about at this point." R. 230-31, 238.
The prosecutor's stated reason for striking jurors numbered 46, 55, and 139, though weak, appears to be race-neutral. Moreover, the defense struck a number of white veniremembers for the same reason — that they responded to few, if any, voir dire questions, and counsel simply did not have the same amount of information on those jurors as he had on others. R. 239, 241, 245.
In McPherson v. State, 634 So.2d 1048, 1049 (Ala.Cr.App. 1993), the State used five of its six strikes to eliminate black veniremembers and the defense used all of its strikes to eliminate white veniremembers. On appeal, the attorney general made an "equitable 'unclean hands' argument" based on the fact that the defendant had struck only white veniremembers. The State maintained that the appellant should be barred from complaining of conduct in which he, too, participated. See alsoDeFries v. State, 597 So.2d 742, 751 (Ala.Cr.App. 1992), wherein this court observed the following:
 "When both parties engage in the same outward conduct, the defendant does not establish that the State's inward motivation was 'bad' by arguing that his own was 'good.' The appellant has the burden of going forward with evidence implying the presence of a discriminatory intent on the part of the State, not the absence of a discriminatory intent on his own part."
We hold that the State's strikes of jurors numbered 46, 55, and 139 were race-neutral. Furthermore, the appellant has no basis upon which to object to those strikes when he gave the identical reasons for some of his own strikes of white veniremembers.
 III
Relying on Ex parte Darby, 516 So.2d 786 (Ala. 1987), andDozier v. State, 596 So.2d 49 (Ala.Cr.App. 1991), the appellant argues that he is entitled to a new trial because the jury heard evidence and the prosecutor implied in closing argument that he had committed a collateral offense not charged in the indictment.
The appellant complains of testimony that he sold cocaine to another informant about one month before the events giving rise to the present trafficking in cannabis prosecution.
The convictions in Darby and Dozier (both prosecutions for distribution of cocaine) were reversed because evidence of uncharged prior sales of cocaine was admitted against the *Page 421 
accused. However, a reversal is not required in this case because the issue has not been preserved for appellate review.
On cross-examination of informant Johnny Spain, defense counsel questioned the witness as follows:
 "Q. Now, from the onset Mr. Marty was the target of this investigation, was he not?
". . . .
 "A. He came to me wanting to know if I knew any place to buy pot. So from that point on, yes, sir, I guess he did become the target.
 "Q. And during this time period from December the 8th to January the 1st you didn't buy any drugs off Mr. Marty, did you?
"A. I didn't, no, sir.
 "Q. And that was a targeted thing to do, was to buy drugs off of Mr. Marty, too, wasn't it, that was part of the game plan?
 "A. No, sir, the only game plan was the original discussion of the marijuana.
 "Q. The same game plan that you didn't realize was a game plan until after your conversation out there on December the 8th?
 "A. Yes, sir. Unless you are referring to the gram of coke that Julia and Scott Donovan bought from Marty.
 "[DEFENSE COUNSEL]: Judge, I object and move to exclude that as totally unresponsive.
 "THE COURT: You asked the question, [defense counsel]. Overrule." R. 505-07 (emphasis added).
Defense counsel's objection, that the witness's answer was "unresponsive," was correctly overruled. "The fact that the answer was not anticipated does not automatically make it non-responsive." Howell v. State, 443 So.2d 1326, 1328
(Ala.Cr.App. 1983). Before the witness gave the answer emphasized above, defense counsel had twice asked the witness about "buy[ing] drugs off Mr. Marty." Because defense counsel did not move to exclude the answer on the basis that it interjected evidence of a collateral offense not charged in the indictment, he is procedurally barred from raising that ground as a basis for reversal on appeal. See Ex parte Frith,526 So.2d 880, 882 (Ala. 1987).
Moreover, evidence similar to that of which the appellant now complains was previously admitted without proper objection. "To be timely, an objection must be interposed as soon as the ground for the objection becomes apparent." Watson v. State,439 So.2d 762, 769 (Ala.Cr.App. 1983); accord Leverett v.State, 462 So.2d 972, 979 (Ala.Cr.App. 1984). On direct examination of Johnny Spain, the confidential informant, the following occurred:
 "Q. [By assistant district attorney] [Y]ou and Mr. Marty, what did y'all do before you left Attalla Electronics?
 "A. Mr. Marty bagged up a, I think it was what is called an eight ball of coke into quarter bags.
 "[DEFENSE COUNSEL]: I object to this Judge. Move to exclude.
"THE COURT: Overruled.
"Q. [By assistant district attorney] Go ahead.
 "A. He bagged up, like I say, what I think was an eight ball of coke into quarter grams to be resold.
 "[DEFENSE COUNSEL]: I object to what he thinks it was.
"THE COURT: Overrule. You can cross-examine him.
 "A. He bagged up a large quantity of coke into quarter gram bags to be resold.
 "Q. [By assistant district attorney]: Okay. All right. And prior to leaving Attalla Electronics did [the appellant] use any of that coke or any of that —
"A. Yes, sir, he did.
"Q. What appeared to be coke?
"A. Yes, sir." R. 490-91.
"An objection . . . should fairly and specifically point out the particular grounds on which an alleged error occurred in order to inform the trial judge of the legal basis of the objection." Ex parte Webb, 586 So.2d 954, 957 (Ala. 1991). See also Ex parte Weaver, 530 So.2d 258, 259 (Ala. 1988). Defense counsel's *Page 422 
first objection, "I object to this Judge. Move to exclude," stated no grounds, was insufficient to direct the trial court's attention to the claimed error, and preserved nothing for this court's review. "A general objection that does not specify grounds preserves nothing for review. Thompson v. State,575 So.2d 1238 (Ala.Cr.App. 1991)." Landreth v. State,600 So.2d 440, 447 (Ala.Cr.App. 1992). "The objection, 'I object,' 'is not sufficient to place the trial court in error for overruling the objection.' Smoot v. State, 381 So.2d 668, 671 (Ala.Cr.App. 1980)." Johnson v. State, 607 So.2d 1301, 1303 (Ala.Cr.App. 1992).
Defense counsel's second objection, "I object to what he thinks it was," although it could be construed as an objection on the basis of incompetency or "mental operation," did not direct the trial court's attention to the ground for inadmissibility of the evidence now asserted on appeal: that the testimony referred to a collateral offense not charged in the indictment. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parteFrith, 526 So.2d at 882.
The appellant also argues that the following comment by the prosecutor in closing argument constituted a reference to collateral crimes not charged in the indictment:
 "[ASSISTANT DISTRICT ATTORNEY]: Marty, see I can take a thousand bucks worth of coke and turn it into nineteen hundred.
 "[DEFENSE COUNSEL]: Judge, I'm going to object to all this line of argument. It goes to nothing that is charged in this indictment." R. 1100-01.
It is unclear whether the prosecutor was referring to a statement made by the appellant or to the appellant. From the portion of the assistant district attorney's summation quoted above, we simply cannot determine what the prosecutor intended or whether the appellant was prejudiced by the remark. See Webbv. State, 539 So.2d 343, 349 (Ala.Cr.App. 1987). "[S]ince the record does not contain the arguments of counsel in their entirety, we cannot know the context in which this statement was made." Kitsos v. State, 574 So.2d 979, 983-84 (Ala.Cr.App. 1990).
 "The appellate court must be able to ascertain with reasonable certainty what was said before improper argument may be the predicate for a reversal. The remarks in this case are too incomplete to warrant the conclusion that they prejudiced the defendant. ' "[I]f the argument was beyond the bounds of legal propriety the record does not sufficiently disclose what was said in its context for us to say the argument was improper." ' "
Bethune v. State, 542 So.2d 332, 334 (Ala.Cr.App. 1989) (citations omitted).
Moreover, because defense counsel had not previously entered a proper objection to the admission of evidence of collateral crimes involving the appellant's prior sale of cocaine, that testimony was before the jury and subject to comment by the prosecutor. "Where evidence which was illegal and irrelevant was not objected to when offered, and was allowed to remain before the jury, it is competent for counsel on either side to refer to it or comment on it in argument before the jury."Commander v. State, 374 So.2d 910, 920 (Ala.Cr.App. 1978), cert. quashed, 374 So.2d 921 (Ala. 1979).
 " 'All evidence admitted is subject to comment by counsel.' Roberts v. State, 346 So.2d 473, 476
(Ala.Cr.App.), cert. denied, Ex parte State ex rel. Atty. Gen., 346 So.2d 478 (Ala. 1977). 'The test of legitimate argument is that whatever is based on a fact or facts in evidence is within the scope of proper comment in argument to the jury.' Kirkland v. State, 340 So.2d 1139, 1140 (Ala.Cr.App. 1976), cert. denied, Ex parte Kirkland, 340 So.2d 1140
(Ala. 1977)."
Player v. State, 421 So.2d 1338, 1341 (Ala.Cr.App. 1982). See also Steele v. State, 512 So.2d 124, 127 (Ala.Cr.App. 1986), cert. quashed, 512 So.2d 128 (Ala. 1987). The prosecutor's remark, even if taken by the jury as a reference to a sale of cocaine by the appellant not charged in the indictment, added nothing that was not already before the jury. *Page 423 
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The trial of the appellant was consolidated with that of his codefendants — Lindsey Macon, whose conviction is also being affirmed this date, Macon v. State, [Ms. CR 92-1930, November 10, 1994] ___ So.2d ___ (Ala.Cr.App. 1994), Andre Anthony Murrell, and Melvin Reese. *Page 806