PER CURIAM.
 

 Jimmy Lamar Killingsworth was convicted of three counts of capital murder for the killing of Steven C. Spears, Jr., and one count of second-degree assault for the assault of Monica Spears, see § 13A-6-21(a)(2), Ala.Code 1975. The murder was made capital because it was committed through the use of a deadly weapon while the victim was in a vehicle, see § 13A-5-40(a)(17), Ala.Code 1975; because it was committed through the use of a deadly weapon fired from a vehicle, see § 13A-5-40(a)(18), Ala.Code 1975; and because it was committed during the course of a first-degree robbery or an attempt thereof, see § 13A-5-40(a)(2), Ala.Code 1975. By a vote of 7-5, the jury recommended that Killingsworth be sentenced to life imprisonment without the possibility of parole. The trial court overrode the jury’s recommendation and sentenced him to death. The court also sentenced him to 10 years in prison on the second-degree-assault conviction. Killingsworth filed a motion for a new trial, which the trial court summarily denied. The Court of Criminal Appeals then affirmed the convictions and the death sentence.
 
 Killingsworth v. State,
 
 82 So.3d 716 (Ala.Crim.App.2009). We granted certiorari review to address several issues raised by Killingsworth, including an issue that was not presented to the Court of Criminal Appeals, which we find to be dispositive. See Rule 39(a)(2)(A), Ala. R.App. P.
 

 
 *763
 
 During general voir dire, potential juror F.J. stated as follows in response to defense counsel’s question as to whether any potential jurors knew the families of the victims:
 

 “Juror [F.J.]: [F.J.] I taught school with Beth Bowling [sic], and I was a teacher under Brown Bolding. And Kevin [Bolding] is my vet.
 
 [1]
 

 “Defense Counsel: Could you put all of that out of your mind and just sit on this jury and listen to the evidence?
 

 “Juror [F.J.]: No, sir.
 

 “Defense Counsel: Do you think you would be biased by that?
 

 “Juror [F.J.]: (Nods head affirmatively).”
 

 The jurors were asked whether any of them, for whatever reason, did not wish to sit on the jury. C.J., whose last name is the same as F.J.’s, responded that she did not want to serve.
 

 At the conclusion of general voir dire, the trial court asked counsel, outside the presence of the jury, about jurors who had indicated that they could not be impartial. One of the jurors the trial court mentioned was C.J. After discussing several potential jurors, defense counsel was asked to name those jurors he believed should be dismissed based on their inability to be impartial. Defense counsel listed several potential jurors who had been discussed, including by last name only “J.,” without specifying a first name or initial of the juror. The trial court dismissed 14 jurors for cause, including C.J. As stated, potential juror C.J. indicated that she did not want to serve but did not give a reason. The other 13 potential jurors who were dismissed all indicated an inability to be fair and impartial.
 
 [2]
 
 However, when the court dismissed the admittedly biased potential jurors, it did not dismiss F.J.
 

 The next day, the trial court continued with individual voir dire. F.J. was questioned regarding pretrial publicity and her opinion on the death penalty. She was not asked any more questions regarding her relationships with the victims’ families and whether those relationships would affect her partiality. Ultimately, F.J. served on the jury. • Killingsworth now argues that his right to an impartial jury was violated because, he argues, a juror who was admittedly biased sat on the jury. We agree.
 

 The Sixth Amendment to the United States Constitution provides, in part: “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.... ” “It is well settled that
 
 *764
 
 the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury.”
 
 Ross v. Oklahoma,
 
 487 U.S. 81, 85, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). “[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, ‘indifferent’ jurors.”
 
 Irvin v. Dowd,
 
 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). A defendant is “entitled to be tried by 12, not 9 or even 10 impartial and unprejudiced jurors.”
 
 Parker v. Gladden,
 
 385 U.S. 363, 366, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). Section 6 of the Alabama Constitution gives a defendant the right to a trial “by an impartial jury of the county or district in which the offense was committed.” Article I, § 6, Ala. Const.1901.
 

 Section 12-16-150, Ala.Code 1975, sets out the statutory challenges for cause under Alabama law. However, none of those statutory grounds are applicable in this case. In addition to the grounds set out in § 12-16-150, there are common-law grounds for challenging a veniremember for cause when those grounds are not inconsistent with the statute. The present case involves a common-law ground for challenge based on a suspicion of bias or impartiality.
 

 “Voir dire serves the purpose of assuring a criminal defendant that this right [to an impartial jury] will be protected.”
 
 United States v. Ortiz,
 
 315 F.3d 873, 888 (8th Cir.2002). “[T]he question whether a venireman, is biased has traditionally been determined through
 
 voir dire
 
 culminating in a finding by the trial judge concerning the venireman’s state of mind.... [S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge’s province. Such determinations [are] entitled to deference .... ”
 
 Wainwright v. Witt,
 
 469 U.S. 412, 428-29, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)(footnote omitted).
 

 “Ultimately, the test to be applied is whether the veniremember can set aside his or her opinions, prejudices, or biases, and try the case fairly and impartially, according to the law and the evidence. ... This determination of a veniremember’s absolute bias or favor is based on the veniremember’s answers and demeanor and is within the discretion of the trial court; however, that discretion is not unlimited. Rule 18.4(e), Ala. R.Crim. P., provides, in part: ‘When a prospective juror is subject to challenge for cause or it reasonably appears that the prospective juror cannot or will not render a fair and impartial verdict, the court, on its own initiative or on motion of any party, shall excuse that juror from service in the case.’ Even proof that a veniremember has a bias or fixed opinion is insufficient to support a challenge for cause. A prospective juror should not be disqualified for prejudice or bias if it appears from his or her answers and demeanor that the influence of that prejudice or bias can be eliminated and that, if chosen as a juror, the veniremember would render a verdict according to the law and the evidence.
 
 Mann v. State,
 
 581 So.2d 22, 25 (Ala.Crim.App.1991);
 
 Minshew v. State,
 
 542 So.2d 307 (Ala.Crim.App.1988).”
 

 McGowan v. State,
 
 990 So.2d 931, 951 (Ala.Crim.App.2003).
 

 In the present case, F.J. testified that she knew members of the victims’ family. The fact that a prospective juror knows the victim or members of the victim’s family does not automatically disqualify the prospective juror for cause.
 
 Harris v. State,
 
 632 So.2d 503, 521 (Ala.Crim.App.1992), aff'd, 632 So.2d 543 (Ala.1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). Unless the prospective juror indicates on voir dire that his or her relationship with the victim or the
 
 *765
 
 victim’s family would prevent him or her from being fair and impartial, a challenge for cause should be denied.
 
 Dunning v. State,
 
 659 So.2d 995, 997 (Ala.Crim.App.1994). Here, F.J. stated unequivocally that she could not be impartial. Nothing in the record indicates that F.J. was asked any additional questions regarding her partiality toward the victims’ family members, which is in contrast to other jurors, whose answers regarding their partiality were equivocal. Instead, it appears that both the trial court and the parties may have been confused when the court dismissed C.J., with whom F.J. shared a last name and who never indicated that she could not be impartial, only that she did not want to serve. Nevertheless, F.J., a juror who unequivocally stated that she could not be impartial, sat on the jury that ultimately convicted Killingsworth..
 

 The State argues that Killings-worth waived his right to challenge F.J. for cause based on the equitable doctrine of unclean hands. In support of its position, the State cites
 
 Marty v. State,
 
 656 So.2d 416 (Ala.Crim.App.1994), and
 
 McPherson v. State,
 
 634 So.2d 1048 (Ala.Crim.App.1993). Both
 
 Marty
 
 and
 
 McPherson
 
 involved peremptory challenges and not challenges for cause, and neither case applied the equitable doctrine of unclean hands to bar a defendant from challenging the State’s motivations for its use of peremptory challenges. Additionally, neither
 
 Marty
 
 nor
 
 McPherson
 
 involved the imposition of the death penalty, in which case Rule 39(a)(2)(D), Ala. R.App. P., allows this Court to notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court or the Court of Criminal Appeals or set forth in the petition and to take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the defendant.
 

 Amendment VI of the United States Constitution guarantees an accused the right to be tried by “an impartial jury.” Article I, § 6, Constitution of Alabama 1901, protects this same right. Killings-worth’s right to an impartial jury was violated, and he is entitled to a new trial. Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand the cause to that court for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, and MURDOCK, JJ., concur.
 

 SHAW, J., recuses himself.
 
 *
 

 [1]
 

 1. Charles Brown Bolding and his wife, Beth, are Monica's parents and Kevin Bolding is Monica's brother. Charles was a witness at the penalty and sentencing phases of the trial.
 

 [2]
 

 . A.R. (could not be fair based on relationships with Killingsworth's family); T.P. (same); N.S. (knew Killingsworth and could not be fair); G.B. (knew the Boldings and stated it was "very well possible” that his knowledge of the family would keep him from being fair and impartial); J.B. (worked with and knew the Boldings and could not be impartial); R.B. (did not think he could base his decision only on the law and the evidence and could not be fair); W.C. (thought his friendship with the Spears family would affect his ability to be impartial); M.E. (worked with and knew the Boldings and would find it extremely difficult to be fair and would also have problems looking at pictures); C.E. (could not be impartial because the Boldings' son was his veterinarian); L.K. (worked with Mr. Bolding and knew the family too well to render a fair verdict); M.T. (could not put aside sympathy for both victims in order to come up with verdict and did not think she could look at pictures and be fair); B J. (feelings about the criminal-justice system would make it "hard” and “difficult” to be fair); and J.G. (could not be impartial because his brother was murdered).