(92 South. 182)
**VANN v. STATE.** (4 Div. 922.)

(Supreme Court of Alabama. Dec. 22, 1921. Rehearing Denied Jan. 19, 1922.)

**1. Criminal law ⚖➔1035(6)—Objection to order for venue not raised in court below not reviewed.**

Where no complaint was made in the court below that the venire for the trial was fixed at "65 persons, being 50 persons drawn as regular jurors for the fourth week of February term, and 15 persons whose names are now drawn by the court from the jury box of the county," was not as required by Gen. Acts 1919, p. 1041, amending Gen. Acts 1909, p. 317, § 32, under Supreme Court Rule 27 (198 Ala. xv, 77 South. vii), the objections will be considered waived.

**2. Homicide ⚖➔166(10)—Evidence tending to show motive relevant.**

In a murder prosecution, where defendant testified that he went to his barn and found that it had been broken into, and went to search for the person who did it, there was no error in overruling defendant's objection to the state's question, "You went there after some beer, didn't you?" the question indicating that defendant by going to the barn discovered the beer was gone, and his disappointment in not finding it may have increased or caused his aggravation and produced a motive for the alleged offense.

**3. Homicide ⚖➔156(1)—Evidence indicating animus, contradicting defendant, properly admitted.**

Where the state's theory was that the homicide was intentional and malicious under circumstances constituting murder, and the defendant's theory was that the killing was unintentional and accidental, there was no error in submitting to the jury evidence of transactions indicating defendant's animus closely connected in time with the shooting, contradicting defendant's evidence.

**4. Criminal law ⚖➔829(1)—No error in refusing charge when covered by court's oral charge.**

Where the oral charge in a murder prosecution covered all the principles and rules of law applicable to the testimony, in view of Code 1907, § 5364, as amended by Gen. Acts 1915, p. 815, no error could be predicated on a refused written charge if it stated a correct rule of law applicable to the case.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Corey Vann was convicted of murder in the first decree, and he appeals. Affirmed.

Farmer, Merrill & Farmer and Espy & Hill, all of Dothan, for appellant.

The judgment of the court did not comply with the statute, and the venire is therefore subject to be stricken. Acts 1919, p. 1041; 183 Ala. 40, 62 South. 800; 170 Ala. 138, 54 South. 496; 174 Ala. 11, 56 South. 998, Ann. Cas. 1914B, 760; 172 Ala. 418, 55 South. 601; 185 Ala. 120, 64 South. 66; 186 Ala. 89, 65 South. 164, Ann. Cas. 1917E, 378; 1 Ala. App. 144, 56 South. 11; 10 Ala. App. 65, 64 South. 653. The fact that the defendant went to his barn for some beer was prejudicial. 106 Ala. 30, 17 South. 456. The evidence objected to as to the details of the difficulty should have been ruled out. 11 Enc. of Evidence, 403; 94 Ala. 9, 11 South. 190; 91 Ala. 39, 8 South. 688; 142 Ala. 112, 38 South. 261. Counsel discuss the assignments of error of charges refused, but in view of the opinion it is not deemed necessary to here set them out.

---

⚖➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

MILLER, J. Corey Vann, the appellant, was jointly indicted with Coy Vann for killing Arthur Kirkland under such circumstances as constituted murder in the first decree.

A separate trial was demanded by the defendants, and it was granted by the court. Section 7842, Code 1907. The appellant, Corey Vann, was tried, convicted of murder in the first degree, and his punishment fixed by the jury at imprisonment in the penitentiary for life. He was duly arraigned, pleaded not guilty, and the court set his trial for Thursday, March 10, 1921. The judgment entry then recites this:

"Venire for his trial fixed at 65 persons, being 50 persons drawn as regular jurors for the fourth week of February term, 1921, and 15 persons whose names are now drawn by the court from the jury box of the county, and the sheriff is directed to summon said persons to be in court on the day defendant's case is set for trial and to serve Cory Vann forthwith with a copy of the indictment on which he is to be tried and also with a copy of the list of the names of persons constituting the venire for his trial."

[1] The defendant complains at this judgment entry because it fails to affirmatively show that the 50 regular jurors were the jurors drawn for the week the case was set for trial, and that the 15 special jurors were drawn in open court, as required by section 32 of a General Act of the Legislature of 1919, p. 1041, amending an act approved August 31, 1909 (Gen. Acts 1909, p. 305).

These questions are not raised in the court below, and are not properly before this court for review. It was not necessary for these orders of the court as to venire to be in this transcript, as no questions thereon were raised before the trial court and there decided. Objections should have been made in the court below and exceptions reserved to the rulings of the court, so the matters complained of could be reviewed by this court. Rule 27, Supreme Ct. (198 Ala. xv, 77 South. vii); Johnson v. State, 205 Ala. 665, 89 South. 55; Anderson v. State, 204 Ala. 476, 85 South. 789; Charley v. State, 204 Ala. 687, 87 South. 177.

If these 50 regular jurors were not the ones drawn for the week the case was set for trial, the defendant should have objected to them in the court below; and if these 15 special jurors were not drawn in open court by the presiding judge, as the statute directs, then this question should have been raised in the court below, and thereby obtained rulings thereon by the court for us to review—if adverse to the defendant, and with exception reserved thereto. They will be considered waived, as they were not raised in the court below. Supreme Court Rule 27 (198 Ala. xv, 77 South. vii), and authorities supra.

[2] There was a party at the residence of the defendant on the night of the difficulty. The deceased, Arthur Kirkland, Vester Gamble, and many others were there. The defendant testified that between 11 and 12 o'clock, after nearly all the guests had left, he and his brother Coy and a Mr. Blount went from his residence about 25 steps to his barn. They found a staple that held the lock fastening the door prized out and the barn had been entered by some one. He then returned to the house, got shells and shotgun, and went to find the person that had broken into his crib. He said:

"I asked him [Coy] where was that buggy that drove off, and he said, 'Yonder it is,' and I said, 'Come and go with me and see who it is.'"

The defendant then, on direct examination, testified as follows:

"When I got in speaking distance, I hollered at them to stop two or three times and they got off the buggy and set the barrel off and twisted it around in the ditch, and got back on the buggy and drove on; and I hollered at them and said, 'Who is it been in my crib?' They drove somewhere 30 or 40 yards and stopped, and when I got in something like 8 or 10 steps of the buggy Kirkland got off the buggy on the right-hand side and Gamble got on the left-hand side, and they come back towards meeting me; and Kirkland says, 'I ain't been in your crib, and we ain't got your damn beer,' and I says, 'I know you haven't got it, for you set it off right back there.' And he come on towards me and hit me. He hit me on the head and grabbed my gun, and Vester Gamble grabbed the gun and struck me one lick with his fist, and I dropped the lamp, and we all three had hold of the gun, commenced tussling over it, and me and Kirkland fell, and Gamble turned loose and run. The gun fired just about time we were about halfway down to the ground. I did not shoot Kirkland. I had hold of the gun by the breech; Kirkland had hold of it, one of his hands above mine, and Gamble had hold of the stock; and they were trying to wring the gun out of my hands, and I was trying to keep them from getting it."

On cross-examination defendant said: "I went out of my house with Coy Vann and Mr. Blount and went to my crib." The solicitor for the state then asked this question: "You went there after some beer, didn't you?" The defendant objected to the question, and assigned many grounds for his objection. The court overruled the objection. The witness answered, "Yes, sir," and the defendant moved to exclude the answer and assigned the same grounds for his motion that were assigned to the question. The

court overruled the motion. The defendant duly excepted in each instance to the ruling of the court.

The difficulty was in regard to beer that was taken from the barn. The defendant testified he went to the barn, found it had been broken into, and went to search for the person who did it and took the beer. In view of the direct examination of the witness, it was not improper for the court to allow the state to ask that question on cross-examination, and to leave the answer with the jury. Then this question and answer indicated that the defendant by going to the barn discovered the beer was gone, and his disappointment in not finding it may have increased or caused his aggravation and produced a motive for the alleged offense. Any evidence which tends to show motive for the commission of the offense is relevant, as it may also throw light on the intent with which the act was committed. Marler v. State, 67 Ala. 55, 42 Am. Rep. 95; Pate v. State, 94 Ala. 14, 10 South. 665.

[3] On direct examination defendant testified:

"Vester Gamble grabbed the gun and struck me one lick with his fist."

On cross-examination defendant said:

"Gamble hit me. After Kirkland was shot and on the ground, I did not go up and hit and cuff Gamble, while he was holding Kirkland."

The evidence for the state tended to show that defendant said, as he left his house with the gun, that he was going to kill the "son of a b." that broke into his barn; that he and Arthur Kirkland had some words in regard to breaking into the barn, and the missing beer, and then there was a difficulty; and that defendant pointed the gun at deceased and shot him in the side of the head, some of the load going into his brain. The deceased died from the wound several hours afterwards. The evidence of defendant tended to show that defendant, deceased, and Vester Gamble got into a difficulty; that the gun went off accidentally in the scuffle over it; and that there was no intent to kill the deceased. Vester Gamble, for the state on rebuttal, testified:

"After Kirkland was shot, I picked him up and put his head in my lap. Corey Vann, the defendant, come to me."

The court, over the objection of the defendant, permitted the state to ask this witness this question, "What did he do to you?" and this answer, over defendant's motion to exclude, was permitted to go to the jury, "He hit me two or three times in the back." The witness further said, "Mr. Williams pulled him off of me." The state then asked him this question, "When he pulled him off of you, what did you say? Witness answered: "I told Jim Williams to turn him loose; I would settle with him." There was objection by defendant to each of these questions, and motion to exclude each answer; the court ruled against the defendant, and he excepted to each ruling of the court. This was some time, several minutes, after the shooting. It was at the same place of the difficulty. The deceased was still alive. All parties connected with the transaction were present. The head of deceased was in Vester Gamble's lap. The original difficulty was between deceased, Vester Gamble, and the defendant, with his brother Coy Vann near by. The state's theory was, from its evidence, that the homicide was intentional and malicious under circumstances constituting murder; and the defendant's theory, from his evidence, was that the killing was unintentional and accidental.

The transaction brought out by these questions contradicted the testimony of defendant. It was closely connected with the shooting, although not a part of the res gestæ; it indicated the animus of the defendant therein; and it has a bearing on his mental attitude toward the deceased and Gamble, with whom he had the original difficulty. It was illustrative of the original difficulty and tended to shed light on whether the shooting was intentional or accidental. The court did not err in allowing the answers to the questions to go to the jury. Ryan v. State, 100 Ala. 105, 14 South. 766; Williams v. State, 147 Ala. 10, 41 South. 992; Smith v. State, 183 Ala. 10, headnote 14, 62 South. 864.

The court properly permitted defendant afterwards to state his version of it to the jury. The relevancy and materiality of the above answers are made clearer thereby. It was as follows:

"After Mr. and Mrs. Williams come down to the place of the shooting, Mrs. Williams said, 'What in the world is the matter?' and Vester Gamble' said, 'You (referring to me) have shot Arthur Kirkland,' and I said, 'I ain't done it; if he is shot, you shot him, or he did it himself when he fell with that gun.' And he run at me like he wanted to hit me, and I hit him one time. He wasn't holding Kirkland's head in his lap; but he come back to the scene of the shooting with Jim Williams and his wife. Jim Williams didn't grab me and hold me."

[4] It appears from the record that there were written charges given by the court. They are not in the transcript. They should be. The refused charges are in the record. The clear and comprehensive oral charge of the court covers in this case all the principles and rules of law applicable to the testimony. Hence no error could be predicated on a refused written charge, if it stated a correct rule of law applicable to the case, as the defendant under the general oral charge of the court received substantially and fairly

the benefit of it. The court will not be put in error for refusing to repeat to the jury the same rule and principle of law in a written charge which it has clearly expressed to them in the general oral charge. Code, § 5364, as amended General Acts 1915, p. 815.

The able attorneys representing the defendant have argued only ·the exceptions specially mentioned in this opinion. There are other exceptions noted in the record. They were not referred to in the brief by them, no doubt, as they were not considered ·errors, or at least, not reversible errors. However, as this is a criminal· case, we have read the entire record, and considered all ·the exceptions as the statute requires; but ·feel that no good purpose will be served ·in writing in this opinion of those exceptions ·not mentioned in brief, as we find no error in them. There is no reversible error in the record, and this case is therefore affirmed.

Affirmed. .

ANDERSON, C. J., and SAYRE and GARDNER, JJ., ·concur.