146 So. 287

**CATRETT v. STATE.**
I Div. 85.

Court of Appeals of Alabama.
Feb. 14, 1933.

Hybart, Heard & Chason, of Bay Minette, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

Brief did not reach the Reporter.

BRICKEN, Presiding Judge.

■ This appellant was indicted for killing one Bartholomew Cauley under such circumstances as constituted murder in the first degree. The indictment contained one count which charged that he (appellant, naming him), unlawfully and with malice aforethought, killed Bartholomew Cauley, by shooting him with a gun, etc. The indictment was in proper form and substance.

The trial in the lower court resulted in the conviction of the accused for the offense of murder in the second degree, the punishment being fixed by the jury at imprisonment for ten years. He was duly sentenced by the court in accordance with the verdict to ten years' imprisonment in the penitentiary.

■■ Appellant, by a supplemental insistence, claims there is manifest error upon the record because it fails to set out or contain the order of the court commanding the sheriff to summon not less than fifty nor more than one hundred persons, including those drawn on the regular juries for the week set for the trial of this case; and that the record fails to show that in open court the court drew from the jury box the number of names required, etc. In this connection appellant insists that the provisions of section 8644, Code 1923, are mandatory, and cites the case of Morris v. State, 146 Ala. 66, 41 So. 274; also the case of Roan v. State (Ala. Sup.) 143 So. 454.[1] The orders required of the lower court in this connection are mandatory as held in innumerable decisions of the appellate courts of this state, but in this case there is no insistence that the court below failed in any manner to make and enter every necessary order provided for in section 8644 of the Code 1923; this contention is confined to the question only that such orders do not appear in the transcript of this appeal.

The law now is, where no question was raised before the trial court as to the order of the court for the special venire, or as to fixing the day for the trial of defendant, the transcript on appeal should not contain such matters. In the absence of any such question, such proceedings are, upon appeal, presumed to have been regular and legal. Such are the express terms of the statute. Section 3249, Code 1923. See, also, Supreme Court Rule 27; Paitry v. State, 196 Ala. 598, 72 So. 36; Johnson v. State, 205 Ala. 665, 89 So. 55; Anderson v. State, 204 Ala. 476, 85 So. 789; Charlie v. State, 204 Ala. 687, 87 So. 177; Vann v. State, 207 Ala. 152, 92 So. 182.

■ In this case the evidence, without dispute, disclosed that Cauley, the deceased, was

---

[1] 225 Ala. 428.

found dead in an isolated place in Baldwin county, and that his death was the result of a shotgun wound, and that deceased had been shot directly in his back.

The evidence adduced upon the trial against this appellant was entirely circumstantial, and it is insisted by his counsel it was insufficient to support a conviction, that it was so vague and uncertain as to hardly create a suspicion against him, and hence the state failed to meet the burden of proof necessary to a conviction in all criminal cases. There was some evidence tending to show the proximity of appellant at the time and place when and where the killing occurred. There was also evidence that a few tracks were found near the place of the killing, the closest of these to the body was shown by the evidence to be about forty or fifty feet below where the body was found, and this evidence, in our opinion, was sufficient to go to the jury on the question as to whether the tracks were those of the accused. There was nothing to show when the tracks were made or that the person who made them was the one who fired the fatal shot. The state undertook to show flight of the appellant; but it is strenuously insisted that the so-called flight was fully and conclusively explained, as the accused had a right to do under the law. The state also offered some evidence tending to show that some three years prior to the trial in this case that this appellant was prosecuted in the justice of the peace court for violating the game law, to which charge appellant interposed a plea of guilty in the justice court, and that deceased was a witness against this appellant, defendant in said case. And further that some two or three weeks after the trial in the justice court appellant and deceased had some words in front of the post office. As to this occurrence appellant testified: "He plead guilty in the Justice Court for violating the game law; that Cauley was the principal witness against him; that he didn't get mad with him because of that prosecution; had some words with him in front of the Post Office; that was about three years ago; that since that time Cauley had helped him drive some cattle, spoke to him a number of times in passing; that they lived in the same neighborhood about two miles apart; that he had no ill will towards Mr. Cauley."

■■ We have given careful, attentive consideration to the entire record in this case and to every incident of the trial as shown by the transcript. We think the most incriminating evidence allowed upon the trial of the court below was the map prepared by one B. F. Albin, a state witness; the map being allowed in evidence over the objection and exception of appellant. This diagram or map with its indicia, notations, and characters, operated in effect as a perfect picture of the homicide complained of and a portrayal of

the killing in line with the theory and insistences of the prosecution. This witness Albin admitted he knew nothing whatever relative to the killing of Cauley, or the locus in quo of the offense, and that he prepared the map solely upon information given him by other parties in the absence of appellant. This map showed in detail practically every fact upon which the state relied for a conviction, and was highly prejudicial to the substantial rights of the accused. Being predicated upon hearsay only, the map should not have been allowed in evidence and the exception reserved to its introduction must be sustained. As stated, the map portrays a perfect picture of the killing of Cauley by the defendant, all hearsay, and its tendency was to show how the killing occurred in line only with the theory of the state. The location where the body was found, and purported tracks of the accused, indicated by red marks, leading direct from the body to where the defendant was shown by the map to have rejoined his hunting companions and all this, together with numerous other words of explanation as to how the killing was perpetrated, rendering it formidable and prejudicial, indeed, in the hands of the jury while engaged in their deliberations on this case. Witness Albin, the drawer of the map, admitted putting thereon the red dots purported to be the continuous tracks of the accused from the body to where the defendant rejoined his party. This was based upon the unfounded and unwarranted imagination of the drawer himself, for no witness who gave him information (hearsay as stated) told or instructed him to depict by these red marks the movement of the accused. Such a portrayal of the locus in quo would certainly, in the hands of the jury, tend to dissipate much, if not all, doubt in their minds as to the guilt of the accused. As stated, it was admittedly hearsay; it was therefore inadmissible: and we cannot conceive of anything which could have proven more prejudicial and hurtful. Some locations and points of the map were verified by witnesses in their testimony, but no witness undertook to testify that the red dots or marks indicated thereon as the tracks of the defendant, were correct. A conviction for crime, slight or serious, cannot be rested upon the imagination, conjecture, or guesswork of the author of the map, or that of any other witness; and here, the evidence is without conflict that this so-called map was thus prepared and presented to the court, admitted in evidence and given to the jury to use and refer to during their deliberations.

The foregoing necessitates a reversal of the judgment of conviction from which this appeal was taken.

There are numerous other insistences of error, but a discussion in detail of each of these questions would serve no good purpose.

On the question of the alleged flight of the defendant, we quote, as being applicable here, from the case of Gilbert v. State, 20 Ala. App. 28, 100 So. 566, 567, wherein this court said:

"In a prosecution for crime it is permissible for the state to offer proof of the flight of the defendant from the neighborhood of the crime as a circumstance tending to show the guilt of the accused. But, where a crime has been committed, and proof of flight of the accused is offered, or evidence tending to show that the defendant absented himself from the community in which the alleged crime was committed, the probative force, or the value of the fact of flight depends entirely upon the purpose of the defendant in thus absenting himself from the community. The question as to why the defendant left the community and remained away from it becomes a question for the jury; therefore, when the state offers proof tending to show that the defendant fled from the community, it is permissible under the rules of evidence to allow both the state and the defendant to show all those things which the defendant said and did when he left, and while away from the community, which tend to explain his flight, the quo animo thereof; whether the absence of the defendant was due to a sense of guilt, or his desire to avoid arrest, or through fear of arrest, or, on the other hand, whether his absence was due to other causes. Flight means, as a rule, when used in connection with a prosecution for crime, that the defendant absented himself from the community of the crime out of a sense of guilt, out of fear of, or to avoid, arrest, and, as stated, any word or act of the defendant while in flight—i. e., while away from the neighborhood of the crime—tending to explain the reason for his absence is admissible as a part of it.

"Of course the defendant, under this rule would not be permitted, to get before the court or jury his declaration that he is not guilty of the crime as this would clearly come within the rule against allowing self-serving declarations; but the evidence which a defendant may offer on this question, as tending to rebut the idea that his absence was in fact a fleeing from justice, are such acts and declarations of his while absent which may tend to show that his absence from the community was due to an entirely different cause. In other words, when flight is offered as a circumstance tending to show the guilt of defendant, the important question is, as to whether, during his absence, the defendant is to be regarded as having been a fugitive from justice, or whether he is to be regarded as having been absent for an innocent and lawful purpose disassociated with any idea of the crime."

W. R. Stuart, the sheriff, was examined as a witness for the state, and among other

things was permitted to testify, over the objection and exception of the defendant, as to his having seen a gun shell like the one introduced in evidence, that he had gotten one from Hamp Catrett, an uncle of defendant, and had it in his possession, and the court allowed said shell introduced in evidence. This was error and related to transaction between the witness and an uncle of the accused in the absence of the accused. Nothing said or done under such circumstances could be binding upon the defendant, and that it was plainly prejudicial cannot be questioned. Moreover, there was no attempt made to show when the shell was gotten from the uncle of the defendant; but it was shown without dispute that shells like the one in evidence were sold, and generally used in that community.

Archie McMillan was a state witness and gave evidence as to his activities with others in trying to ascertain who the person was that killed the deceased, and being recalled for further examination he admitted he had taken a great deal of interest in the case, and in response to the question, "You don't like the defendant?" stated, "I haven't got a thing against him." In order to show to the contrary, the defendant undertook to show that about a week or ten days after the defendant was put in jail on this charge, he (the witness) had stated, the time and place being made clear, "that it would not do for the defendant to get out of jail, it was dangerous, and that certain parties would have to move from that community when he got out." The court would not allow the defendant to show this and stated from the bench, "I don't think it has a tendency to show ill will on the part of the witness to the defendant." We are of the opinion it was the province of the jury to decide this question and not for the court; hence error prevailed in thus abridging the cross-examination of this witness. Byrd v. State, 17 Ala. App. 301, 84 So. 777.

We are of the opinion the court should have granted defendant's motion for a new trial.

Reversed and remanded.

