765 So.2d 21 (1999)
William Gary McCART, Peggy Wilson McCart, and Gary Keith McCart
v.
STATE.
CR-97-1770.
Court of Criminal Appeals of Alabama.
October 1, 1999.
Opinion on Return to Remand February 4, 2000.
*22 James Warren May, Foley, for appellants.
Bill Pryor, atty. gen., and Stephanie N. Morman, asst. atty. gen., for appellee.

*23 On Applications for Rehearing

BASCHAB, Judge.
This court's opinion of May 28, 1999, is withdrawn and the following opinion is substituted therefor.
The appellants, William Gary McCart (Gary), Peggy Wilson McCart, and Gary Keith McCart (Keith), were convicted of conspiracy to traffic in marijuana, in violation of §§ 13A-12-204 and 13A-12-231(1)a., Ala.Code 1975, and unlawful possession of drug paraphernalia, in violation of § 13A-12-260(c), Ala.Code 1975. The trial court sentenced each appellant to serve 25 years in prison and ordered each to pay a $25,000 fine on the conspiracy convictions. The court also sentenced each appellant to serve one year in the Baldwin County jail and to pay a $2,000 fine on the unlawful possession of drug paraphernalia convictions. This appeal followed.

I.
The appellants argue that the trial court erred in denying their motions to compel discovery of audiotape recordings made by a confidential informant and law enforcement officers during the investigation of the case. In their motions, the appellants maintained that it was "well within reason to suspect that the tape or tapes will contain exculpatory material for at least one, if not more, of these co-defendants." (R. 25, 91, 133.) After reviewing the tapes in camera, the trial court entered the following order:[1]
"The court has listened to tape recordings in the possession of the State in camera. There is no exculpatory evidence therein. The State shall not be required to provide the tapes to the Defendant or to disclose the identity of the confidential informant unless they intend to use the same at trial."
(R. 2, 68, 110.) Afterward, defense counsel requested that the tapes be made a sealed exhibit to the record, and the trial court granted counsel's request. The State did not introduce the tapes into evidence at trial.
The appellants allege that the tapes must have contained exculpatory evidence, which would have been discoverable under Rule 16, Ala. R.Crim. P., and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, they have not specified any information that they allege was exculpatory. Under Rule 16, a criminal defendant is entitled to discover documents and tangible things "(1) [w]hich are material to the preparation of defendant's defense; ... (2)[w]hich are intended for use by the state/municipality as evidence at the trial; or (3)[w]hich were obtained from or belong to the defendant." Rule 16.1(c), Ala. R.Crim. P. "To prove a Brady violation, a defendant must show that `"(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial."'" Freeman v. State, 722 So.2d 806, 810 (Ala.Cr. App.1998) (quoting Johnson v. State, 612 So.2d 1288, 1293 (Ala.Cr.App.1992)). In the Brady context, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Finally, with regard to discovery of exculpatory evidence, we have held:
"`A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [State's] files. See United States v. Bagley, 473 U.S. [667], at 675, 105 S.Ct. [3375], at [3379], [87 L.Ed.2d 481 (1985)]; United States v. Agurs, supra, 427 U.S. [97], at 111, 96 S.Ct. [2392], at 2401, [49 L.Ed.2d 342 (1976) ]. Although the eye of an advocate may be helpful to a defendant in *24 ferreting out information, Dennis v. United States, 384 U.S. 855, 875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966), this Court has never held even in the absence of a statute restricting disclosurethat a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 [10 L.Ed.2d 215 (1963) ], it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. See Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one").
"`We find that Ritchie's interest (as well as that of the [State]) in ensuring a fair trial can be protected fully by requiring that the [Children and Youth Services] files be submitted only to the trial court for in camera review. Although this rule denies Ritchie the benefits of an "advocate's eye," we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file (e.g., the medical report), he is free to request it directly from the court, and argue in favor of its materiality. Moreover, the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.
"`. . . .'
"On authority of [Pennsylvania v.] Ritchie, [480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)], we hold that Russell was not entitled to examine the complete file of the DHS concerning the victim. Here, the trial judge examined the entire file and provided Russell with the material which was `conceivably exculpatory.' This satisfied the requirement that the defendant be allowed access to information material to his defense. Ritchie, 107 S.Ct. at 1002. This same procedure was approved and ordered in Ex parte Riggs, 423 So.2d 202, 203 (Ala. 1982) (in mandamus proceeding, parent in damage suit against teacher sought to have trial judge required to permit her to discover records of Department of Pensions and Security concerning investigation of teacher's alleged assault on parent's child).
"This Court has examined the entire DHS file, the portion of that file disclosed to Russell, and the portion available to the district attorney. We have found no material information or information which, had it been disclosed to the defense, would have created a reasonable probability that the result of the trial would have been different. In our opinion, Russell received all the information to which he was entitled and has no cause for complaint."
Russell v. State, 533 So.2d 725, 727-28 (Ala.Cr.App.1988) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)).
We have reviewed the audiotapes, and we agree with the trial court's assessment that they do not contain exculpatory material. Furthermore, the State did not introduce the audiotapes at trial, and the audiotapes did not originally belong to any of the appellants. Therefore, the tapes were not discoverable under Rule 16, Ala. R.Crim. P., or under Brady. Consequently, the State was not required to give the appellants access to the tapes, and the trial court did not abuse its discretion in denying *25 the appellants' motions to compel production of the tapes.

II.
The appellants' second argument is that the trial court erred in admitting into evidence two photographs that depicted "sex toys" or "marital aids" that were located in a drawer beneath Gary and Peggy McCart's bed.[2] Before trial, the appellants moved in limine to exclude the photographs, arguing that their prejudicial effect far outweighed their probative value. The defense also offered to stipulate that officers found marijuana in the drawer and that both Gary and Peggy McCart knew the marijuana was in the drawer. The State argued that the photographs were relevant to show that the marijuana was found in a location that contained personal items that belonged to both Gary and Peggy McCart. Further, in asserting that the stipulation would not be sufficient, the prosecutor argued:
"I think it's important for the jury to see where the marijuana was being stored to show the elements of the conspiracy and the knowledge and, you know, the intent. And it's stored in a drawer that involves personal items that would be personal to both Mr. and Mrs. McCart, and I think that's significant.... It's in a drawer that would show joint ownership."
(R. 24-25.) However, the State did agree to offer only two of four photographs of the contents of the drawer.[3] The trial court then denied the appellants' motion in limine, but stated that it would give a curative instruction concerning the photographs during the trial. Before the photographs were shown to the jury, the trial court instructed the jurors as follows:
"Ladies and gentlemen, before you see these photographs I want to give you a cautionary instruction. There will be portrayed in these photographs sexual aids or sexual devices. And the Court instructs you that the Court has ruled these photographs are admissible for what they show and may be used by the State for purposes of evidence to show what they will argue is access to or possession of or control of items within a drawer.
"But you may, if you disapprove of such devices or think they're inappropriate or have any negative feelings about sexual aids or devices, you may not hold that against the defendants and that notion alone is not proof and may not be used by you as proof that the defendants have committed the criminal acts alleged in the indictment. With that, you may show those photographs."
(R. 131-32.)
In addition to arguing that the photographs were more prejudicial than probative, the appellants also contend that their proffered stipulation made it unnecessary to introduce the photographs into evidence. We rejected similar arguments in Duncan v. State, 624 So.2d 1084 (Ala.Cr. App.1993), explaining as follows:
"The appellant claims that the trial court erred by denying her motion in limine to exclude testimony about and photographs of her daughter's injuries at the time the child was admitted to the emergency room on February 18, 1992. Eight witnesses for the State testified about the child's injuries. Thirteen photographs depicting those injuries were admitted in evidence.
"At trial the appellant argued that because she was not charged with the actual assault of her daughter and because *26 she was willing to stipulate to the severity of the injuries received in that assault, the foregoing evidence was not relevant to any disputed issue, was more prejudicial than probative, and should have been excluded.
"We disagree. Evidence describing the injuries of the appellant's daughter was clearly relevant. `It does not lie in the power of one party to prevent the introduction of relevant evidence by admitting in general terms the fact which such evidence tends to prove.... Parties, as a general rule, are entitled to prove the essential facts,to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.' 9 J. Wigmore, Evidence § 2591 at 826 n. 2 (Chadbourn rev.1981) (quoting Dunning v. Maine Central R.R., 91 Me. 87, 39 A. 352, 356 (1897)). `[A] colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate moral force of his evidence.' 9 J. Wigmore at 824 (emphasis in original).
"In Alabama, a party is not required to accept his adversary's stipulation, but may insist on proving the fact.
"`A party's statement on the trial, that he admits the existence of a specified fact which is beneficial to the adverse party, creates a discretion in the trial court, to be exercised within the bounds of reason, to refuse to allow the adverse party to introduce evidence to prove the fact. As a matter of wisdom in the exercise of the discretion, however, the trial court should generally allow the adverse party to introduce evidence to prove the fact unless it is palpable that the admission is as fully persuasive of the existence of the fact as would be the adverse party's offered evidence of the fact.'
"C. Gamble, McElroy's Alabama Evidence, § 472.01(5) (4th ed.1991) (footnotes omitted). See United States v. Davis, 792 F.2d 1299, 1305 (5th Cir.), cert. denied, 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986) (`[w]e will not adopt an inflexible rule that allows a party by stipulation to prevent his adversary's case from being presented in its appropriately full and real life context').
"Notwithstanding the appellant's willingness to stipulate to the severity of her daughter's injuries, testimony on that point was relevant and admissible. Therefore, the photographs depicting those injuries were admissible. `"A photograph `is competent evidence of anything of which it is competent and relevant for a witness to give a verbal description.'" Harrell v. State, 470 So.2d 1303, 1306 (Ala.Cr.App.1984), affirmed, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).' Wilson v. State, 584 So.2d 921, 923 (Ala.Cr.App.1991). `Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence.' Ex parte Siebert, 555 So.2d 780, 783 (Ala.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990)."
624 So.2d at 1085-86.
Similarly, in this case, the photographs were relevant to connect Gary and Peggy McCart to the conspiracy. In addition to showing the location of the marijuana, they showed that both Gary and Peggy McCart had access to and used the drawer and that both stored highly personal articles in the drawer. The proffered stipulation simply would not have conveyed some of this information to the jury. As the trial court noted in denying the appellants' motion, the appellants "would have to almost enter pleas of guilty to supersede what [the State has] to carry." (R. 28.) Therefore, the photographs were relevant, and the State was not required to accept the proffered stipulation. Accordingly, the trial *27 court did not err in admitting the photographs into evidence.
The appellants also argue that "the curative instruction had the effect of emphasizing the prejudicial effect that the evidence produced." (Appellants' brief at 15.) However, they did not present this argument to the trial court. Therefore, they did not properly preserve it for appellate review. See Thomas v. State, 666 So.2d 849 (Ala.Cr.App.1993), rev'd on other grounds, 666 So.2d 855 (Ala.1995).

III.
The appellants' third argument is that, because the State allegedly did not present sufficient evidence to support their convictions, the trial court should have granted their motions for a judgment of acquittal. Specifically, they argue that the evidence did not show that they "agreed either expressly impliedly or in any other fashion to sell, deliver or to actually or constructively possess more than 2.2 pounds of marijuana." (Appellants' brief at p. 18.) When reviewing a trial court's denial of a motion for a judgment of acquittal, this court must determine "whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty." Breckenridge v. State, 628 So.2d 1012, 1018 (Ala. Cr.App.1993). The appellants moved for judgments of acquittal at the close of the State's case, specifically arguing that the State did not present any evidence that connected them to the alleged conspiracy. However, they did not renew their motions at the close of their evidence or in motions for a new trial. Therefore, we will consider only the State's evidence in reviewing the appellants' arguments. See Burell v. State, 680 So.2d 975 (Ala.Cr.App.1996).
The State's evidence showed that Peggy McCart, Gary McCart, and Keith McCart lived in the same house. After investigating the McCarts for a period of time, law enforcement officers obtained a warrant to search the McCart residence. When the officers arrived at the residence to execute the search warrant, Gary McCart pointed to a Tupperware container on a table beside a chair in the living room. There was a marijuana cigarette on top of the container, and more marijuana, scissors, rolling papers, and hemostats were inside the container. Gary McCart told the officers that was all of the marijuana that was in the residence. However, after the officers mentioned that they would be using a dog to search for more marijuana, Gary McCart took the officers to the master bedroom, where they found two sets of scales, some plastic sandwich bags, and a quantity of marijuana. During their search, the officers found more marijuana in a purse in the master bedroom, in a cat food bag in a drawer under Gary and Peggy McCart's waterbed,[4] and in a tin on top of the refrigerator in the kitchen. In Keith McCart's bedroom, the officers found more marijuana and drug paraphernalia, including pipes, bongs, scissors, plastic bags, and rolling papers. During the search, they also found a handheld scanner that would pick up the frequency used by the Sheriff's Department. Finally, in an outbuilding, officers found a setup designed for the indoor cultivation of marijuana.
After the search, the officers questioned the appellants. Gary McCart admitted that he had been selling marijuana for approximately one year. He explained that he obtained one pound of marijuana at a time from a man in Mobile, that the man would "front" him the marijuana, or give it to him on credit, and that he would pay for it after he sold it. Gary McCart admitted to the officers that he had bought and sold at least three pounds of marijuana over a short period of time. He also admitted that he had tried unsuccessfully to grow marijuana in the outbuilding. Finally, he stated that he did not document any cash sales, but that he used a calendar to keep a *28 record of sales he made on credit. Peggy McCart admitted that she knew the marijuana was coming from a man in Mobile and was being fronted, but she denied selling marijuana. Keith McCart admitted that he had been selling marijuana for approximately one year, and he gave the officers the names of two people from whom he had bought marijuana and the names of several people to whom he had sold marijuana.
Officers found the calendar on which Gary McCart kept his record of credit sales on a counter in the kitchen. They also found similar notes with names and numbers on them in Keith McCart's bedroom. A handwriting-identification and document-examination expert testified that Peggy McCart did not make any of the drug-related entries on the calendar, but that she had entered other information on that calendar. Finally, there was testimony that there was more traffic coming and going from the house than was usual for a residence. People would come, stay a short while, and leave.
With respect to conspiracies to commit controlled substance crimes, § 13A-12-204(a), Ala.Code 1975, provides:
"A person is guilty of criminal conspiracy to commit a controlled substance crime if he engages in the conduct defined in Section 13A-4-3(a), and the object of the conspiracy is a controlled substance crime."
Section 13A-4-3(a), Ala.Code 1975, provides:
"A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement."
Finally, § 13A-12-231(1), Ala.Code 1975, defines trafficking in marijuana as follows:
"Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of any part of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of the plant, and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin including the completely defoliated mature stalks of the plant, fiber produced from the stalks, oil, or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination is guilty of a felony, which felony shall be known as `trafficking in cannabis.'"
In a conspiracy prosecution, the State may rely on circumstantial evidence to show the element of agreement. See Williams v. State, 665 So.2d 955 (Ala. Cr.App.1994).
"`The existence of a "confederation or conspiracy need not be proved by positive testimony. It seldom can be. The trier of fact is to determine its existence and extent from all the evidence in the case and the conduct of the parties." Smith v. Board of Commissioners of the Alabama State Bar, 284 Ala. 420, 428, 225 So.2d 829, 835 (1969).
"`"[S]uch unlawful community of purpose entered into as a conspiracy need not be proven by positive testimony. It is rarely so to be shown. It must be determined by the triers of fact from the testimony...; that of the attendant circumstances applying and accompanying the doing of the act, and from the conduct of the defendant subsequent to the criminal act."
"`Lash v. State, 244 Ala. 48, 53, 14 So.2d 229, 232 (1943). A conspiracy "may be shown by circumstantial proof, or inferred from the conduct of the participants in execution of the conspiracy." Skumro v. State, 234 Ala. 4, 7, 170 So. 776, 779 (1936). "Conspiracy may be inferred from the *29 conduct of the conspirators." Cleveland v. State, 20 Ala.App. 426, 428, 103 So. 707, 710 (1924), cert. denied, 212 Ala. 635, 103 So. 711 (1925).'
"Greer, 563 So.2d [39,] 40-41 [(Ala.Cr.App.1990)]."
Zumbado v. State, 615 So.2d 1223, 1242 (Ala.Cr.App.1993). Furthermore,
"[a] conspiracy agreement need not be formal or express. Connelly v. State, 30 Ala.App. 91, 1 So.2d 606, cert. denied, 241 Ala. 132, 1 So.2d 608 (1941). `It is sufficient if there is a meeting of the minds or a tacit agreement, its existence being generally a matter of inference from the acts of the participants.' Connelly, 30 Ala.App. at 92, 1 So.2d at 607."
Samuels v. State, 584 So.2d 958, 962 (Ala. Cr.App.), cert. denied, 584 So.2d 963 (Ala. 1991).
"`In addition, it need not be shown that the defendant knew all of the details of the alleged conspiracy as knowledge of the essential objective is sufficient to impose liability.' United States v. Johnson, 889 F.2d 1032, 1035 (11th Cir. 1989). `Although association alone will not support an inference of conspiracy, association with co-conspirators may be considered as a factor.' United States v. Cannington, 729 F.2d 702, 709 (11th Cir.1984)."
Deutcsh v. State, 610 So.2d 1212, 1234 (Ala.Cr.App.1992). Moreover, because the appellants were charged with conspiracy to traffic in marijuana, the State was not required to show that they possessed or sold more than 2.2 pounds of marijuana at any one time.
"`Conspiracy is a distinct and separate substantive offense from the crime intended, and does not require that the criminal offense agreed to be actually completed.' Calhoun v. State, 460 So.2d 268, 272 (Ala.Cr.App.1984). The state was not required to prove the elements of trafficking in cannabis under § 1312-231. They only had to prove conspiracy to commit that offense pursuant to § 13A-12-204."
Macon v. State, 659 So.2d 221, 224 (Ala.Cr. App.1994). See also Zumbado, supra. Finally,
"`[i]n determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution.'"
Gunter v. State, 665 So.2d 1008, 1011 (Ala. Cr.App.1995) (quoting Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App.1993)).
In this case, the State presented sufficient evidence to show that the appellants conspired to traffic in excess of 2.2 pounds of marijuana. The appellants' conduct and statements to law enforcement officers, the evidence presented at trial, and the circumstances surrounding the offense showed a conspiracy that was ongoing for approximately one year. Gary and Keith McCart had been selling marijuana from their residence for approximately one year, and Peggy McCart, at the very least, knew about and consented to the fronting and selling of marijuana from the residence. Thus, the appellants all knew that large amounts of marijuana were being sold from the residence and at least implicitly consented to the sales. Further, Gary McCart admitted that, over a short period of time, he had bought and sold in excess of 2.2 pounds of marijuana. Therefore, the State presented sufficient circumstantial evidence from which the jury could have concluded beyond a reasonable doubt that the appellants had engaged in an ongoing conspiracy to traffic in excess of 2.2 pounds of marijuana. See Macon v. State, 659 So.2d 221 (Ala.Cr.App.1994); Marty v. State, 656 So.2d 416 (Ala.Cr.App.1994). Accordingly, the trial court properly denied the appellants' motions for a judgment of acquittal.

IV.
The appellants' fourth argument is that the trial court erroneously refused *30 to give their requested jury instructions relating to accumulating quantities of marijuana that are possessed at different times. Rule 21.3, Ala. R.Crim. P., provides:
"No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection."
Before the trial began, defense counsel asked the trial court to decide whether it would give the requested instructions so he could determine how to proceed during the trial. However, when the trial court stated that it would not give the requested instructions, defense counsel did not object. Likewise, counsel did not object to the trial court's refusal to give the requested instructions during the charge conference or after the trial court had given its oral charge. Therefore, the appellants did not preserve this issue for appellate review. See Bullock v. State, 697 So.2d 66 (Ala.Cr.App.1997).

V.
For the above-stated reasons, we affirm the appellants' convictions. Also, the trial court properly fined the appellants $25,000 for their conspiracy to traffic convictions, as required by § 13A-12-231(1)a., Ala.Code 1975. However, the trial court should also have imposed a fine in accordance with § 13A-12-281, Ala.Code 1975, for each of the conspiracy to traffic convictions. See Snell v. State, 715 So.2d 920 (Ala.Cr.App.1998); Pierson v. State, 677 So.2d 246 (Ala.1995). Section 13A-12-281, provides:
"(a) In addition to any disposition and fine authorized by Sections 13A-12-202, 13A-12-203, 13A-12-204, 13A-12-211, 13A-12-212, 13A-12-213, 13A-12-215, or 13A-12-231, ... every person convicted of, or adjudicated delinquent for, a violation of any offense defined in the sections set forth above, shall be assessed for each such offense an additional penalty fixed at $1,000 for first offenders, and $2,000 for second and subsequent offenders.

"(b) All penalties provided for in this division shall be in addition to and not in lieu of any fine authorized by law or required to be imposed pursuant to the provision of the controlled substance statutes set forth in subsection (a) of this section."
(Emphasis added.) Therefore, we remand this case to the trial court so that it can impose the fines required by § 13A-12-281, Ala.Code 1975. On remand, the trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days of the release of this opinion. The return to remand shall include a transcript of the remand proceedings, if any, conducted by the trial court.
STATE'S APPLICATION FOR REHEARING GRANTED; OPINION OF MAY 28, 1999, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED AS TO CONVICTIONS; AFFIRMED IN PART AS TO SENTENCES; REMANDED WITH INSTRUCTIONS FOR IMPOSITION OF FINES; APPELLANTS' APPLICATION FOR REHEARING DENIED; RULE 39(k) MOTIONS DENIED.
LONG, P.J., and McMILLAN, J., concur; COBB and FRY, JJ., dissent.
FRY, Judge, dissenting.
I respectfully disagree with the majority's decision to grant the state's application for rehearing and its conclusion in Part III that the state presented sufficient evidence to sustain Gary, Peggy, and Keith McCart's convictions for conspiracy to traffic in marijuana.
"`In a challenge [to] the sufficiency of the evidence, an appellate court must consider the evidence in the light most *31 favorable to the prosecution, and the appellate court will not substitute its judgment for that of the trier of fact. Brandon v. State, 542 So.2d 1316 (Ala. Cr.App.1989). Therefore, when the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969).'"
Clay v. State, 687 So.2d 1245, 1248 (Ala.Cr.App.1996)(quoting Maddox v. State, 620 So.2d 132, 133-34 (Ala.Cr.App. 1993)).
"A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement."
Section 13A-4-3(a), Ala.Code 1975. See Jefferson v. State, 732 So.2d 1026 (Ala.Cr. App.1998). To establish a prima facie case of conspiracy, the state must prove: 1) the specific intent that a crime be performed; 2) an agreement with at least one other person to engage in or cause the crime to be performed; and 3) the commission of an overt act in furtherance of the conspiracy. Marty v. State, 656 So.2d 416, 418 (Ala.Cr. App.1994); Greer v. State, 563 So.2d 39, 40 (Ala.Cr.App.1990). Accord Lacy v. State, 673 So.2d 820, 822 (Ala.Cr.App.1995). The existence of a conspiracy can rarely be shown by direct evidence; it must be determined by the triers of fact from the conduct of the parties, the trial testimony, the circumstances surrounding the criminal act, and the conduct of the defendant subsequent to the act. Greer, 563 So.2d at 41. "`[The] mere association with persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy.'" Greer, 563 So.2d at 41, quoting United States v. DeSimone, 660 F.2d 532, 537 (5th Cir.1981). Moreover, "[c]onspiracy is a distinct and separate substantive offense from the crime intended, and does not require that the criminal offense agreed to be actually completed." Macon v. State, 659 So.2d 221, 224 (Ala.Cr.App. 1994); Marty, supra.
"The essence of a conspiracy is the agreement to engage in the prohibited conduct." Marty, 656 So.2d at 418. "A conspiracy agreement need not be formal or express." Samuels v. State, 584 So.2d 958, 962 (Ala.Cr.App.1991).
"`Agreements to enter into conspiracies can be shown by inferences from the conduct of the participants. United States v. Elledge, 723 F.2d 864, 865 (11th. Cir.1984). In addition, it need not be shown that the defendant[s] knew all the details of the alleged conspiracy as knowledge of the essential objective is sufficient to impose liability.' United States v. Johnson, 889 F.2d 1032, 1035 (11th Cir.1989)."
Deutcsh v. State, 610 So.2d 1212, 1234 (Ala.Cr.App.1992).
Gary, Peggy, and Keith McCart were charged with conspiring to "knowingly sell, deliver, or actually or constructively possess in excess of 2.2 pounds of marijuana." Essentially, the state had to prove an agreement to commit the offense of trafficking in marijuana.
When the facts are viewed in the light most favorable to the state, the record shows that Gary, Peggy, and Keith McCart lived together in the same house. Gary McCart admitted that during a period of "a month or so" he made at least three purchases of marijuana in approximately one-pound increments from a supplier in Mobile and that he then sold the marijuana from the McCarts' residence. Evidence showing the purchase of the marijuana from the supplier and its subsequent sale to customers was found in a date book that contained notations from December 30, 1996, to February 5, 1997, indicating the amount of money he owed his supplier and the amount of money his customers owed him. One notation in the *32 date book indicated that Keith McCart had purchased one ounce of marijuana from Gary McCart. Additionally, the notations indicated the largest amount of marijuana Gary McCart sold to any customer at one time was two ounces. In their statements to law enforcement officers, Gary McCart and Keith McCart admitted selling marijuana. Their statements did not indicate that they were partners in purchasing and selling marijuana. Keith McCart denied purchasing marijuana from Gary McCart's supplier and provided law enforcement officers with the names of two of his suppliers. Peggy McCart denied selling marijuana. When law enforcement officers searched the McCarts' residence, they found approximately five ounces of marijuana.
Although circumstantial evidence may be used to prove the existence of an agreement, the state's evidence is insufficient to establish that Gary, Peggy, and Keith McCart agreed to or had the specific intent to "knowingly sell, deliver, or actually or constructively possess in excess of 2.2 pounds of marijuana." No evidence, either direct or circumstantial, was presented indicating that there was an agreement among Gary, Peggy, and Keith McCart to "knowingly sell, deliver, or actually or constructively possess in excess of 2.2 pounds of marijuana." The state's evidence of an agreement essentially rests, as one of the narcotics officers admitted during his testimony, on the inference that because Gary, Peggy, and Keith McCart lived in the same house and were related, family members, they were in business together. However, these two facts are insufficient to prove that Gary, Peggy, and Keith Mccart had agreed to traffic in marijuana.
Moreover, the sharing of a date book by Gary and Peggy McCart does not exhibit an agreement. While the date book, which was found on the kitchen counter, does allow the inference that Gary McCart was engaged in the illegal activity of buying and selling marijuana, that Peggy McCart may have known of Gary McCart's actions, and that Keith McCart had bought marijuana from Gary McCart, this evidence does not establish an agreement to knowingly buy and sell more than 2.2 pounds of marijuana. Indeed, the evidence presented indicated that Gary, Peggy, and Keith McCart were aiding and abetting one another in the distribution of marijuana. However, evidence that a person aided or abetted another in the distribution of marijuana, although sufficient to convict the person as a principal for the offense of distributing marijuana is insufficient to convict that person of a conspiracy to commit the offense. Participation without any evidence of an agreement does not reach the level of the separate crime of conspiracy to traffic in marijuana. Furthermore, the date book and Gary McCart's statement indicate that he alone made purchases from a Mobile supplier in approximately one-pound quantities and that he alone sold the marijuana.
Based on the foregoing, no reasonable inference that Gary, Peggy, and Keith McCart agreed to obtain the common goal of "knowingly sell[ing], deliver[ing], or actually or constructively possess[ing] in excess of 2.2 pounds of marijuana" can be drawn from the evidence. While the combined circumstances of the McCarts' association with one another over a period of a month and their alleged distribution of marijuana certainly arouses suspicion that they were engaged in a joint criminal enterprise or venture, these circumstances do not prove beyond a reasonable doubt that Gary, Peggy, and Keith McCart agreed to, and had the specific intent to, buy and sell more than 2.2 pounds of marijuana. Therefore, in my opinion, the state failed to show that there was an agreement, either by "a meeting of the minds or a tacit agreement," to "knowingly sell, deliver, or actually or constructively possess in excess of 2.2 pounds of marijuana." Samuels v. State, supra.
I recognize that the state, to establish a prima facie case of conspiracy to traffic in marijuana, was not required to prove the elements of trafficking in marijuana under *33 § 13A-12-231, Ala.Code 1975. My conclusion, however, does not rest upon the state's failure to recover more than 2.2 pounds of marijuana or upon the fact that the state's evidence failed to show that at any given time Gary, Peggy, and Keith McCart possessed in excess of 2.2 pounds of marijuana. These factors have no bearing on the state's ability to show an agreement among Gary, Peggy, and Keith McCart and their "specific intent" to sell or possess in excess of 2.2 pounds of marijuana. Jefferson v. State, supra. See also Macon v. State, supra (conspiracy does not require that the criminal offense agreed to be actually completed); and Marty v. State, supra (holding that the state was not required to establish that the green plant material was marijuana or that it weighed more than 2.2 pounds to establish a prima facie case of conspiracy to traffic in cannabis).
The majority's conclusion that the state presented sufficient evidence of an agreement seems to rely on the fact that Gary, Peggy, and Keith McCart's resided in the same house and on Gary McCart's admission to law enforcement officers that he had purchased three one-pound increments of marijuana over a period of time. However, to meet the threshold amount of 2.2 pounds, the majority must rely on the weight of the marijuana over a period of weeks or monthsthe adding of ounces and pounds from at least three separate purchases. There is no Alabama case supporting the proposition that the weight of marijuana from several distinct transactions may be combined to attain the threshold amount of 2.2 pounds in a trafficking case. For example, in Lacy, Macon, and Marty, the evidence indicated that an agreement existed to sell, deliver, or possess over the threshold trafficking amount. Likewise, there is no Alabama case supporting the proposition that a conviction can stand for conspiracy to traffic in marijuana in the absence of evidence of an agreement to traffic in any amount less than 2.2 pounds. While I do believe that separate transactions could be used to arrive at the threshold amount of 2.2 pounds of marijuana, the state must establish beyond a reasonable doubt that an agreement among the conspirators existed that their end goal, purpose, or objective was to "knowingly sell, deliver, or actually or constructively possess more than 2.2 pounds of marijuana."
In this case, the state's evidence, at best, establishes that Gary McCart purchased and probably sold three pounds of marijuana between December 30, 1996, and February 5, 1997. Gary McCart, however, could not have conspired with himself. Keith McCart apparently purchased approximately one ounce of marijuana from his father during that period for his own resale purposes. None of the state's evidence established how much marijuana Keith McCart may have purchased from his suppliers or sold to customers. Peggy McCart, at best, was a secretary for Gary McCartanswering the telephone and informing callers when she expected Gary McCart to return home. There is no evidence that she knew how much marijuana was being purchased or sold and certainly no evidence that she and Gary McCart had an agreement or the specific intent to sell or possess 2.2 pounds or more of marijuana.
"`[N]o rule is more fundamental or better settled than that convictions cannot be predicated upon surmise, speculation, and suspicion to establish the accused's criminal agency in the offense charged.' Benefield v. State, 286 Ala. 722, 724, 246 So.2d 483, 485 (1971). Accord, Colley v. State, 41 Ala.App. 273, 275, 128 So.2d 525, 527 (1961). `[T]he possibility that a thing may occur is not alone evidence, even circumstantially, that the thing did occur.' Parker v. State, 280 Ala. 685, 691, 198 So.2d 261, 268 (1967). `A conviction for crime, slight or serious, cannot be rested upon the imagination, conjecture, or guesswork' of any witness. Catrett v. State, 25 Ala.App. 331, 333, 146 So. 287, 289-90 (1933).

*34 "`An inference can be drawn only from facts, and mere possibilities will not sustain a legitimate inference.' Rungan v. State, 25 Ala.App. 287, 288, 145 So. 171, 172 (1932). `In our opinion the evidence, at best, did no more than give rise to a suspicion, surmise, or conjecture that appellant might be guilty as charged. And this of course was not enough.' Orr v. State, 32 Ala.App. 77, 80, 21 So.2d 574, 576 (1945). See also Ammons v. State, 20 Ala.App. 283, 101 So. 511 (1924). `If the evidence raises a mere suspicion, or, admitting all it tends to prove, defendant's guilt is left in uncertainty, or dependent upon conjecture or probabilities, the court should instruct the jury to acquit.' Jones v. State, 90 Ala. 628, 630, 8 So. 383, 384 (1890). `For circumstantial evidence to be sufficient to justify the court in submitting the case to the jury, it must be of such a character as to overcome, prima facie, the presumption of innocence.' Perry v. State, 11 Ala.App. 195, 196-97, 65 So. 683 (1914). `The scintilla rule has no application in a criminal prosecution, where the accused enters upon his trial clothed with the presumption of innocence.' McKee v. State, 26 Ala.App. 589, 589, 164 So. 305 (1935). `While the government need not prove the existence of a formal agreement or otherwise rely on direct evidence to establish a conspiracy,... it must do more than pile "inference upon inference" upon which to base a conspiracy charge.' United States v. Sheikh, 654 F.2d 1057, 1063 (5th Cir. 1981), cert. denied, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). `It is axiomatic that in the trial of all criminal cases the state has the burden of proving every element of the offense charged, and to a degree beyond a reasonable doubt and to a moral certainty.' Kelly v. State, 273 Ala. 240, 243, 139 So.2d 326, 329 (1962). Accord, Cobb v. State, 495 So.2d 705 (Ala.1985)."
Greer v. State, 563 So.2d at 43.
Conspiracy has been called the "darling" of prosecutors. Having served the State of Alabama as a prosecutor for over 17 years, I am inclined to agree with this characterization. However, because of the implications of the majority's holding to sustain Gary, Peggy, and Keith McCart's convictions for conspiracy based upon "inference upon inference," I believe that this particular "darling" has opened a Pandora's box.
COBB, J., concurs.

On Return to Remand
BASCHAB, Judge.
AFFIRMED BY UNPUBLISHED MEMORANDUM. NO OPINION.
LONG, P.J., and McMILLAN, J., concur; COBB and FRY, JJ., dissent.
FRY, Judge, dissenting.
Although the amount of the fine imposed by the trial court pursuant to § 13A-12-281, Ala.Code 1975, for each of the conspiracy-to-traffic convictions is correct, I adhere to the position expressed in my original dissentthat there was insufficient evidence to support those convictions. Because I would have reversed the convictions, I believe the imposition of a fine was not warranted.
COBB, J., concurs.
NOTES
[1] The appellants filed identical motions to compel discovery, and the trial court entered identical orders on the case action summary sheet in each case.
[2] The photographs also showed a cat food bag that contained marijuana, some videotapes, and a savings bond issued in Peggy McCart's name.
[3] In their brief on appeal, the appellants contend that, despite the prosecutor's assurances to the contrary, the two duplicate photographs were admitted into evidence as State's exhibits 40 and 41. However, the testimony at trial established that State's exhibits 40 and 41 were photographs of a purse in which the officers found marijuana. (R. 128-31.)
[4] This is the drawer discussed in Part II of this opinion.